UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH AKINS and BONNIE MORRIS AKINS,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>SETERUS, INC., and BANK OF AMERICA, N.A.,<br><br>　　　　　　Defendants. | No. 2:16-cv-01656-TLN-KJN<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS** |

This matter is before the Court pursuant to Defendant Seterus, Inc.'s[1] ("Defendant") Motion to Dismiss. (ECF No. 23.) Plaintiffs Kenneth Akins and Bonnie Morris Akins ("Plaintiffs") oppose Defendant's Motion to Dismiss. (ECF No. 24.) Defendant filed a Reply (ECF No. 26). Having carefully considered the briefing filed by both parties, the Court hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss. (ECF No. 23.)

///
///
///
///
///

---

[1] Defendant Bank of America, N.A. does not join in this motion.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute between homeowners and their mortgage loan servicing company. Plaintiffs purchased their home in Elk Grove, California, in September 2007. (ECF No. 12 ¶ 19.) In June 2009, Plaintiffs refinanced their mortgage loan with Sierra Pacific Company, Inc. (ECF No. 12 ¶ 20.) On or around September 16, 2013, Plaintiffs sent Bank of America, the loan servicer for their mortgage at the time, a check for $5,646.63, which Plaintiffs allege was intended to satisfy the September and October 2013 payments. (ECF No. 12 ¶ 22.) Plaintiffs state that they did not specify that the September 16, 2013, payment was to be used to pay down the principal. (ECF No. 12 ¶ 23.) Plaintiffs maintain that under Section Four of the note on the mortgage loan with Sierra Pacific, any excess funds should have been applied to the October 2013 payment. (ECF No. 12 ¶ 23.) Plaintiffs allege they were unaware that the excess funds were applied to the principal and that their loan servicers considered the mortgage in arrears because they continued to make monthly payments on their mortgage after October 2013. (ECF No. 12 ¶¶ 25–26.) Although Plaintiffs concede that some payments were tardy, they also made mortgage payments for each month in 2014. (ECF No. 12 ¶ 26.)

Around December 1, 2013, Bank of America transferred the mortgage loan to Defendant for servicing. (ECF No. 12 ¶ 24.) After the transfer, Defendant began charging Plaintiffs late fees for the missing October 2013 payment. (ECF No. 12 ¶ 27.) Defendant notified Plaintiffs that their mortgage was behind on payments. (ECF No. 12 ¶ 28.) Plaintiffs inquired as to why this was the case, and Defendant sent them a letter on June 16, 2014, explaining that it considered their loan delinquent from the moment Defendant began servicing the account. (ECF No. 12 ¶ 28.) Defendant sent Plaintiffs another letter on or around June 23, 2015, stating that the September 2013 payment satisfied the installment for September, and that because there was no open installment, the excess funds were applied as a principal balance reduction. (ECF No. 12 ¶ 29.)

Plaintiffs allege that despite Defendant's knowledge of the misapplied September 2013 payment, it did not review the terms of the note to ensure that the payments were proper based on the parties' contractual obligations. (ECF No. 12 ¶ 30.) Plaintiffs attempted to communicate

with Defendant to show that they had not missed a mortgage payment, but Defendant refused to acknowledge the prior payments. (ECF No. 12 ¶ 31.) Plaintiffs allege in fall 2015, Defendant stopped taking Plaintiffs' mortgage checks and refused to credit payments to their account. (ECF No. 12 ¶ 32.) Plaintiffs allege Defendant also notified credit reporting agencies that Plaintiffs were behind on their mortgage payments. (ECF No. 12 ¶ 33.) Plaintiffs learned of this fact when they attempted to purchase a new car in spring 2016. (ECF No. 12 ¶ 35.) They had trouble finding a car loan, but eventually purchased a used car with a high interest rate. (ECF No. 12 ¶ 36.)

Plaintiffs filed the instant suit against Defendant on July 15, 2016. Plaintiffs filed a First Amended Complaint ("FAC") (ECF No. 12) on October 12, 2016. Plaintiffs seek damages, attorneys' fees, and an injunction to prevent Defendants from evicting Plaintiffs and selling or transferring title to Plaintiffs' home. (ECF No. 12 at 11.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Moreover, it is inappropriate to assume that the plaintiff can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged [.]" *Associated Gen. Contractors of Cal., Inc.v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)).

### III. ANALYSIS

Plaintiff's FAC sets out six claims: (1) breach of contract; (2) negligence; (3) negligent infliction of emotional distress; (4) violation of the Consumer Credit Reporting Agency Act ("CCRAA"), Cal. Civ. Code § 1785.25; (5) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and (6) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* (ECF No. 12.) Defendant moves to dismiss each of these claims for failure to state a claim upon which relief may be granted and argues that some claims cannot be brought because the statute of limitations period has run. (ECF No. 23.) The Court will first address statutes of limitations and will then address whether the causes of actions fail to state a claim upon which relief may be granted.

#### A. Statute of Limitations

Defendant argues that the negligent infliction of emotional distress, CCRAA, and TILA claims are all barred by the statutes of limitations periods. (ECF No. 23 at 14, 16, 17.) Plaintiffs allege that any applicable statutes of limitations have been tolled by Defendant's fraudulent concealment, and that they are not time-barred from bringing the aforementioned claims. (ECF No. 12 at 6–7.)

##### i. Tolling

Plaintiffs allege in their FAC that any applicable statutes of limitations are tolled by Defendant's fraudulent concealment, which entailed "continuing, knowing and active concealment of the facts alleged [in the FAC.]" (ECF No. 12 at 6.) Plaintiffs state that due to Defendant's "concealment and misrepresentations . . . [they] could not and did not discover" the fraudulent actions. (ECF No. 12 at 6–7.) Defendant does not address Plaintiffs' tolling argument.

Fraudulent concealment can be invoked "only if the plaintiff both pleads and proves that the defendant *actively* misled her, and that she had neither actual nor constructive knowledge of the *facts constituting [the] cause of action* despite her due diligence." *Grimmett v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996) (citing *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir. 1987)). Failure to plead the allegedly concealed facts with particularity in the complaint waives

5

this tolling defense. *Id.* The limitations period does not toll because an individual is ignorant of her cause of action. *See Volk*, 816 F.2d at 1416.

Plaintiffs' claims fail to reflect active concealment. Plaintiffs concede Defendant informed them that they were behind on their payments and wrote them a letter stating why it considered their loan to be delinquent. (ECF No. 12 at 5.) Plaintiffs allege that when they wrote to inquire why this was the case, Defendant wrote them back on June 16, 2014, stating that it considered "their loan delinquent from the moment it began servicing their account" and applied their payments to what it considered to be "prior outstanding monthly payments." (ECF No. 12 at 5.) Plaintiffs do not plead any allegedly concealed facts in their FAC and, as demonstrated above, had all the facts necessary to discover their cause of action with due diligence. The Court thus finds that the applicable limitations periods are not tolled. Thus, the question of whether Plaintiffs' complaint was timely filed rests on the statute of limitations for each claim. Accordingly, the Court turns to an analysis of each claim.

*ii. Negligent Infliction of Emotional Distress (Count III)*

Plaintiffs allege Defendant and Bank of America were "negligent, careless, and/or failed to exercise reasonable care with respect to their conduct, statements, and/or actions toward Plaintiffs, and their conduct was a substantial factor in causing serious and severe emotional distress to Plaintiffs." (ECF No. 12 at 9.) The Court reads Defendant's motion to dismiss to say that the injurious event was the alleged misapplication of the September 2013 payment and that "Plaintiffs were aware of this issue by no later June 2014." (ECF No. 23 at 14.) Therefore, Defendant argues that the claim is time-barred. (ECF No. 23 at 14.) Plaintiffs did not respond to this assertion in their opposition. In fact, Plaintiffs did not address this specific claim at all. (ECF No. 24.)

The statute of limitations to file a negligent infliction of emotional distress claim is two years. Cal. Civ. Proc. Code § 335.1. The statute of limitations begins to run at the time of the allegedly injurious event. *Campanano v. California Medical Center*, 38 Cal. App. 4th 1322, 1328 (1995). It would appear to the Court that since the injurious event is Plaintiffs learning of the application of the payment at issue in June 2014, the statute of limitations has run on this claim.

6

Plaintiffs filed their original complaint on July 15, 2016, well beyond the two-year period. Accordingly, Defendant's motion to dismiss the third claim is GRANTED with prejudice.

### iii. CCRAA Violation (Count IV)

Plaintiffs allege Defendant and Bank of America "furnished information" presumably to a credit reporting agency that they both "knew, and had reason to know, was inaccurate and incomplete, including but not limited to reporting overdue payments." (ECF No. 12 at 9.) (ECF No. 23 at 15.) Defendant asserts that because Plaintiffs concede they knew as of June 2014 that they were considered in default on the loan, their claim is time-barred. (ECF No. 23 at 16.) Plaintiffs argue Defendant's June 2014 letter stating that they were delinquent on the loan "is not actual or constructive knowledge of credit reporting activities." (ECF No. 24 at 13.) Plaintiffs also state that they only found out about the negative effects of credit reporting when they applied for loans to purchase a new car in spring 2016. (ECF No. 24 at 13.)

The CCRAA requires that an action be brought "at any time within two years after the discovery by the consumer of the misrepresentation." Cal. Civ. Code § 1785.33. "[T]he limitations period does not begin to run until the plaintiff . . . discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Banga v. Equifax Info. Services, LLC*, 473 Fed. Appx. 712, 713 (9th Cir. 2016). The ultimate burden, however, "is on the defendant to demonstrate that a reasonably diligent plaintiff would have discovered the facts constituting the violation." *See Drew v. Equifax Info. Services, LLC*, 690 F.3d 1100, 1110 (9th Cir. 2012).

Plaintiffs allege in their complaint that they had difficulty purchasing a car in spring 2016 because they learned that their "credit scores had dropped precipitously." (ECF No. 12 at 6.) Defendant argues that Plaintiffs have not pled sufficient facts to demonstrate that the credit reporting was inaccurate or impermissible. (ECF No. 13 at 15.) This argument is insufficient to demonstrate that a reasonably diligent Plaintiff would have discovered the alleged inaccurate reports to credit agencies any earlier. It is also irrelevant to the statute of limitations matter. Taking Plaintiffs' factual allegations as true, the Court finds that the statute of limitations began

to run in spring 2016.  Given that Plaintiffs are within the necessary time period in which to bring a CCRAA claim, the claim must be evaluated on its merits.

### *iv. TILA Violation (Count VI)*

Plaintiffs allege that Defendant's refusal to credit mortgage payments to their account resulted in additional charges and "the reporting of negative information to a consumer reporting agency."  (ECF No. 12 at 11.)  Defendant argues that Plaintiffs were aware of this issue "by no later than June 2014" and therefore, the claim is time-barred.  (ECF No. 23 at 17.)  Plaintiffs did not respond to this assertion in their opposition to Defendant's motion to dismiss and did not address the TILA claim at all.  (ECF No. 24.)

The statute of limitations to file a TILA violation claim is one year "from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  As previously stated, Plaintiffs allege that they did not learn of the negative reporting to credit agencies until spring 2016 when they attempted to purchase a car.  (ECF No. 12 at 6.)  Given that Plaintiffs' initial complaint was filed on July 15, 2016, they are well within the necessary time period in which to bring this claim.  Thus, this claim must also be evaluated on its merits.

### B. <u>Failure to State a Claim</u>

Defendant argues Plaintiffs fail to state a claim for all six causes of action.  The Court has dismissed Plaintiffs' negligent infliction of emotional distress claim, but will address each of the other claims in turn.

### *ii. Breach of Contract (Count I)*

Plaintiffs allege Defendant breached Section Four of the note "by allocating funds to the [principal] rather than the monthly payments."  (ECF No. 12 at 7.)  Plaintiffs state that Defendant breached the contractual terms of the note by "attempting to collect, or causing attempts to collect, amounts not due and not owed," and they have thus suffered harm.  (ECF No. 12 at 7–8.)  Defendant argues that Plaintiffs' claim fails because: (1) it was not a party to the loan agreement at the time of the alleged breach; (2) Bank of America properly applied Plaintiffs' excess payment; and (3) Plaintiffs have not suffered any harm.

Plaintiffs allege Defendant "was an agent, servant, employee, and/or joint venture of each

of the remaining Defendants . . . and each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said facts." (ECF No. 12 at 3.) Defendant argues that it is not the party alleged to "have committed the breach of the loan agreement" and that Plaintiffs cannot establish "a contractual relationship with Defendant at the time of the alleged breach." (ECF No. 23 at 6, 9.) The question of whether an agency relationship exists is a question of fact. *Rookard v. Mexicoach*, 680 F.2d 1527, 1261 (9th Cir. 1982). Thus, the question of whether Defendant was an agent or party to the contract at the time of the alleged breach is a question of fact that is not decided at this stage.

Defendant argues the payment was properly applied by Bank of America and Plaintiffs did not suffer any harm. Defendant states the note "does not condition the lender['s] . . . ability to apply excess proceeds to the principal balance of a loan on the lender (or its agents) receiving written authorization from the borrowers," and only "imposes a unilateral obligation on a borrower to 'tell the Note Holder in writing' that he or she is submitting a Prepayment." (ECF No. 23 at 11.) Plaintiffs assert in their opposition that the plain language of the note and the application of contractual interpretation rules prove that Section Four constrains the borrower and the lender. (ECF No. 24 at 4, 6.)

"The fundamental canon of construction which is applicable to contracts generally is the ascertainment of the intention of the parties." *Universal Sales Corp. v. California Press Mfg. Co.*, 20 Cal. 2d 751, 760 (1942) (citing Cal. Civ. Code § 1636). A section of a written document, even though it is clear and explicit, may not be understood as establishing "conclusive evidence of the intention of the parties." *Id.* California Civil Code section 1641 provides that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."

Neither Plaintiffs nor Defendant have attached the text of Section Four of the note on the mortgage loan between Plaintiffs and Sierra Pacific Mortgage Company, Inc. to any of their pleadings. The most complete statement of Section Four is in Plaintiffs' opposition, which states:

> I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a

9

> Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

(ECF No. 24 at 7.) Without the full text of the note on the mortgage loan, the Court is unable to determine whether Plaintiffs' or Defendant's interpretation of Section Four is correct. Thus, the Court cannot determine whether Defendant breached the contract. Plaintiffs must file an amended complaint attaching the note on the mortgage loan to proceed with this claim. Accordingly, Defendant's motion to dismiss the first claim is GRANTED with leave to amend.

### *iii. Negligence (Count II)*

Plaintiffs allege that Defendant had a duty to perform its work with due care as Plaintiffs' loan servicer. (ECF No. 12 at 8.) Plaintiffs state that Defendant failed to: "use ordinary care in performing [Plaintiffs'] transactions;" "monitor and supervise their agents and employees;" "adequately investigate concerns raised by [Plaintiffs];" and/or "meet the industry standard of care in performing [Plaintiffs'] transactions." (ECF No. 12 at 8–9.) Defendant argues that it was not the loan servicer at the time of the alleged negligent act, but even if it were, it did not owe a duty of care to Plaintiffs. (ECF No. 23 at 12–13.)

Negligence requires a showing of: (1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). The question of whether a duty of care exists is a question of law to be determined on a case–by–case basis. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013). In California, generally "a financial transaction owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991). However, "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Alvarez v. BAC Home Loans Servicing, LP*, 228 Cal. App. 4th 941, 945 (2014) (internal quotation marks omitted). To determine whether a duty of care exists, the Court must balance the *Biakanja* factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm, [3] the degree of certainty that the plaintiff suffered injury,

[4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*See Nymark*, 231 Cal. App. 3d at 1098 (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)).

Defendant raised the *Lueras* case to conclude that it did not owe Plaintiffs a duty of care (ECF No. 23 at 13), and also argues that *Biakanja* does not apply (ECF No. 26 at 9). This Court has repeatedly found that *Biakanja* applies to negligence claims in the mortgage context. *See Beltz v. Wells Fargo Home Mortg.*, 2017 WL 784910 *6 (E.D. Cal. 2017); *see also Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 955 (E.D. Cal. 2015). Defendant essentially askes this Court to revisit its previous decisions on the application of the *Biakanja* factors in cases similar to this one. The Court declines to do so. Defendant fails to offer analysis of the *Biakanja* factors in its motion to dismiss or in its reply brief. Thus, the Court reviews Plaintiffs' arguments and the complaint on its face.

As to the first factor, the extent to which the transaction was intended to affect the plaintiff, the Court finds that application of the September 2013 payment at issue to either the principal balance on the loan or the next month's payment was intended to affect the Plaintiffs. The transaction at issue affects Plaintiffs because if it were not made or applied incorrectly, it would certainly affect Plaintiffs' financial situation. This factor weighs in favor of Plaintiffs.

As to the second factor, the foreseeability of harm to plaintiffs, the Court finds that it is not possible to determine foreseeability without evaluating the full text of the note on the mortgage loan and how excess payments are to be applied. Thus, this factor favors neither Plaintiffs nor Defendant.

As to the third factor, the degree of certainty that the plaintiff sustained an injury, Plaintiffs allege that due to Defendant's negligence, they have "suffer[ed] economic losses and other general and specific damages." (ECF No. 12 at 9.) Plaintiffs also state in their opposition that Defendant's misrepresentations caused them "inflated late fees and charges, escalation towards foreclosure of their home, and anxiety, humiliation, and stress." (ECF No. 24 at 12.)

Thus, Plaintiffs adequately pled that they sustained an injury as a result of the allegedly misapplied September 2013 payment. This factor weighs in favor of Plaintiffs.

As to the fourth factor, the closeness of the connection between defendant's conduct and the injury suffered, Plaintiffs' allegations support a finding that there is a close connection between Defendant's alleged misapplication of the September 2013 payment and the harm Plaintiffs sustained. As previously stated, Plaintiffs allege that Defendant failed to: "use ordinary care in performing [Plaintiffs'] transactions;" "monitor and supervise their agents and employees;" "adequately investigate concerns raised by [Plaintiffs];" and/or "meet the industry standard of care in performing [Plaintiffs'] transactions." (ECF No. 12 at 8–9.) Plaintiffs allege that it is specifically this "wrongful conduct" that caused them to "suffer economic loss and other general and specific damages." (ECF No. 12 at 9.) Accordingly, the harm was a direct result of Defendant's conduct and this factor weighs in favor of Plaintiffs.

As to the fifth factor, moral blame attached to defendant's conduct, it is not clear at this point the extent to which moral blame should be applied to Defendant's conduct. However, "[t]he borrower's lack of bargaining power, coupled with conflicts of interest that exist in modern loan servicing, provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers . . ." *See Alvarez*, 228 Cal. App. 4th at 949. Thus, Defendant's conduct, if found unreasonable, would run afoul of the moral imperative it holds as a provider. This factor weighs in favor of Plaintiffs.

As to the sixth factor, the policy of preventing future harm, the Court finds that this policy likely creates a duty of care. "[T]he California Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost." *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 903 (2013). In *Jolley*, the defendant bank purchased the plaintiff borrower's assets through a purchase and assumption agreement from the Federal Deposit Insurance Corporation, which had taken the original lender of the loan into receivership. *Jolley*, 213 Cal. App. 4th at 877. In evaluating this sixth *Biakanja* factor in plaintiff's negligence claim, the *Jolley* court found that this policy favors imposing a duty of care. *Id.* at 901. The *Jolley* court explained that

when "a bank acquires . . . [a loan] from a failed bank part of what it acquires is the history of the loan . . . simple good business practices dictate that [a bank] take into account the position in which the borrower has been placed prior to their acquisition of the loan." *Id.* Similarly here, in order to prevent harm to Plaintiffs, Defendant likely owes a duty of care to take into account Plaintiffs' position in regard to payments upon acquisition of their loan.

After carefully balancing the six *Biakanja* factors, the Court finds that Defendant likely owed Plaintiffs a duty of care in handling the payments on their mortgage loan. Accordingly, Defendant's motion to dismiss the second claim is DENIED.

### iv. CCRAA Violation (Count IV)

Plaintiffs allege that Defendants made "inaccurate and incomplete" statements to credit reporting agencies. (ECF No. 12 at 9.) Defendants argue that the CCRAA claim is "devoid of any factual allegations that would illuminate the exact nature of this claim." (ECF No. 23 at 15.)

The Fair Reporting Credit Act often preempts state laws regarding the duties of individuals who provide information to credit reporting agencies, but Congress expressly exempted claims under the CCRAA (Cal. Civ. Code § 1785.25) from preemption. 15 U.S.C. § 1681t(b)(1)(F); *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 888 (9th Cir. 2010). Under the CCRAA, "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). "Incomplete or inaccurate" requires furnishers of credit information to "not only refrain from making any reports that are obviously wrong or missing crucial data, but also that the reports not contain information that is materially misleading." *Kuns v. Ocwen Loan Servicing, LLC*, 611 Fed. Appx. 398, 400 (9th Cir. 2015).

Plaintiffs identify the specific transaction at issue in the FAC — the supposed misapplication of the September 2013 payment. (ECF No. 12 at 5, 9.) However, the Court agrees with the argument made by Defendant that Plaintiffs have not pled any facts to show why this information is "inaccurate and incomplete," a required element in this claim. Plaintiffs have simply made a conclusory statement and fail to supply factual support for the statement. In

evaluating a motion to dismiss for failure to state a claim, the Court must strike conclusory allegations. Accordingly, Defendant's motion to dismiss the fourth claim is GRANTED with leave to amend.

*v. Unfair Business Practices (Count V)*

Plaintiffs allege that Defendant engaged in unlawful, unfair, and/or fraudulent business practices based on the other claims in the FAC. (ECF No. 12 at 10.) Defendant argues that because Plaintiffs based this claim on legal theories in the other claims in the FAC, and those claims fail, Plaintiffs have not stated a UCL claim. (ECF No. 23 at 16.) The Court found above that Plaintiffs have adequately pled CCRAA and negligence claims. Thus, Defendant's argument is void. Accordingly, Defendant's motion to dismiss the fifth cause of action is DENIED.

*vi. TILA Violation (Count VI)*

Plaintiffs allege Defendant refused to credit their mortgage payments to their account, which resulted in charges and the reporting of negative information to credit reporting agencies. (ECF No. 12 at 11.) Defendant argues Plaintiffs' TILA claim fails because: (1) the application of the payment was done by Bank of America; (2) "payment was done in accordance with the language of the Note"; (3) Plaintiffs suffered no harm; and (4) it is "absolutely devoid of any factual allegations sufficient to put Defendant on notice." (ECF No. 23 at 17.)

Congress enacted TILA "to ensure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). To ensure the remedial nature of the statute, courts "construe the Act's provisions liberally in favor of the consumer." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009) (internal quotations marks and citations omitted).

The Court finds Defendant's fourth argument persuasive, and thus it need not address the others. Plaintiffs simply make conclusory statements about Defendant's reporting of negative information to credit reporting agencies. Plaintiffs do not allege sufficient facts to state a TILA claim — they do not explain how Defendant possibly failed to adequately disclose the credit terms of their mortgage loan to them. Furthermore, without the full text of the note on the

mortgage loan, the Court is also unable to determine whether Defendant failed to disclose the requisite terms. Accordingly, Defendant's motion to dismiss the sixth claim is GRANTED without prejudice.

**IV. CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Defendant's motion to dismiss the first claim is GRANTED without prejudice;
2. Defendant's motion to dismiss the second claim is DENIED;
3. Defendant's motion to dismiss the third claim is GRANTED with leave to amend;
4. Defendant's motion to dismiss the fourth claim is GRANTED without prejudice;
5. Defendant's motion to dismiss the fifth claim is DENIED; and
6. Defendant's motion to dismiss the sixth claim is GRANTED with leave to amend.

Plaintiff may file an amended complaint within thirty (30) days of the date this Order is filed.

IT IS SO ORDERED.

Dated: December 8, 2017

Troy L. Nunley
United States District Judge