UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KENNETH AKINS and BONNIE
MORRIS AKINS,

          Plaintiffs,

    v.

SETERUS, INC., and BANK OF
AMERICA, N.A.,

          Defendants.

No. 2:16-cv-01656-TLN-KJN

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

      This matter is before the Court on Defendant Seterus, Inc.'s[1] ("Defendant") Motion to Dismiss.  (ECF No. 36.)  Plaintiffs Kenneth and Bonnie Akins ("Plaintiffs") oppose Defendant's motion.  (ECF No. 38.)  Defendants filed a reply.  (ECF No. 40.)  Having carefully considered the briefing filed by both parties, the Court hereby GRANTS Defendant's Motion to Dismiss.  (ECF No. 36.)

///

///

///

///

---

[1]    Defendant Bank of America, N.A. does not join in this motion.

1

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2         This case involves a dispute between homeowners and their mortgage loan servicing

3    company.[2]  On or around September 16, 2013, Plaintiffs sent Bank of America, N.A. ("BANA"),

4    the loan servicer for their mortgage at the time, a check which they allege was intended to satisfy

5    both the September and October 2013 payments.  (ECF No. 35 at ¶ 21.)  Plaintiffs allege they

6    were unaware that rather than being applied as the October 2013 payment, excess funds from this

7    check were applied to the principal and BANA considered the mortgage in arrears.  (*Id.* at ¶ 24.)

8    Around December 1, 2013, BANA transferred the mortgage to Defendant for servicing.  (*Id.* at ¶

9    23.)  After the transfer, Defendant began charging Plaintiffs late fees.  (*Id.* at ¶ 26.)  Defendant

10   explained it considered Plaintiffs' loan delinquent from the moment it began servicing the

11   account, as the September 2013 payment satisfied the installment for September, but the excess

12   funds were applied as a principal balance reduction rather than an October 2013 payment because

13   there was no open installment.  (*Id.* at ¶¶ 27–28.)  Defendant had been applying Plaintiffs'

14   payments to what Defendant considered prior outstanding monthly payments.  (*Id.* at ¶ 27.)

15        Plaintiffs filed the operative Third Amended Complaint ("TAC") on September 23, 2019,

16   alleging claims against Defendant for specific harms related to loan servicing.  (*See id.*)

17   Defendant filed the instant Motion to Dismiss on October 9, 2019.  (ECF No. 36.)  Plaintiff filed

18   an opposition on November 20, 2019 (ECF No. 38), and Defendant filed a reply on November 26,

19   2019 (ECF No. 40).

20   **II.    STANDARD OF LAW**

21        A motion to dismiss for failure to state a claim upon which relief can be granted under

22   Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

23   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

24   "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See*

25   *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the

26   ─────────────────

27   [2]    The Court need not recount all background facts of the instant case here, as they are set forth fully in the Court's September 6, 2019 Order granting in part and denying in part Defendant's Motion to Dismiss.  (ECF No. 34.)  The factual allegations in the Second Amended

28   Complaint and the TAC are substantially the same.  (*Compare* ECF No. 29, *with* ECF No. 35.)

2

complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

*Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)).

### III.   ANALYSIS

Plaintiffs' TAC alleges two claims — (1) negligence and (2) a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210.  (*See* ECF No. 35.)  Defendant moves to dismiss both of these claims for failure to state a claim upon which relief may be granted.[3]  (*See* ECF No. 36.)  The Court will evaluate each of Plaintiffs' claims in turn.

#### A.   Negligence

Plaintiffs allege Defendant breached a duty of care owed to Plaintiffs as its loan servicer due to its failure to "use ordinary care in performing the transactions described [in the TAC]," "competently monitor and supervise [its] agents and employees," "adequately investigate the concerns raised by [Plaintiffs]," and "meet the industry standard of care in performing the

---

[3]     Defendant also requests the Court take judicial notice of Exhibits 1 through 7.  (ECF No. 37 at 1–3.)  Under Federal Rule of Evidence 201, a court can take judicial notice of facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  With regard to the publicly-recorded documents — Exhibits 1 through 5 — the accuracy of such records is not subject to reasonable dispute.  *See Armacost v. HSBC Bank USA*, No. 10-CV-274-EJL-LMB, 2011 WL 825151, at *1 n.1 (D. Id. Feb. 9, 2011) (taking judicial notice of documents filed in a county's public record, including deeds of trust); *Pantoja v. Countywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1189 n. 12 (N.D. Cal. 2009); *W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992).  Exhibits 6 and 7 are "proceedings and determinations" of this Court, which are also suitable for judicial notice.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).  For these reasons and noting no opposition from Plaintiffs, Defendant's Request for Judicial Notice of Exhibits 1 through 7 is GRANTED.

4

1    transactions described [in the TAC]."  (ECF No. 35 at ¶ 42–45.)  In moving to dismiss the

2    negligence claim, Defendant argues BANA is the only entity responsible for the purported breach

3    and Plaintiffs fail to allege facts to warrant application of the "successor liability" theory.  (ECF

4    No. 36 at 10–11.)  Defendant contends it does not owe Plaintiffs any duty of care, but even if

5    there were such a duty, neither BANA nor Defendant breached the duty.  (*Id.* at 11–14, 18–19.)

6    Defendant also maintains the "economic loss rule" bars Plaintiffs' negligence claim, BANA's

7    application of the September 2013 payment was lawful, and Plaintiffs have not suffered any

8    harm.  (*Id.* at 14–19.)  As the Court finds BANA's application of the September 2013 payment

9    was lawful and there was no subsequent breach of duty by Defendant, the Court declines to

10    address the remainder of Defendant's arguments.

11              *i.*     *BANA's Application of the September 2013 Payment*

12          Defendant argues even if it owed a duty to Plaintiffs, the negligence claim still fails as

13    Plaintiffs "cannot demonstrate that the principal wrongdoing alleged in the TAC and this claim

14    for relief — BANA's application or misapplication of the September 2013 payment at issue —

15    was contractually unlawful."  (ECF No. 36 at 16–17.)  In opposition, Plaintiffs assert that Section

16    Four of the promissory note ("Note") governs this scenario and, at best, contains ambiguous

17    language that should be construed against Defendant, the drafter.  (ECF No. 38 at 13–15.)

18          When interpreting a contract, a court is to "give effect to the mutual intention of the

19    parties as it existed at the time of contracting."  Cal. Civ. Code § 1636.  "When a contract is

20    reduced to writing, the intention of the parties is to be ascertained from the writing alone, if

21    possible."  *Id*. § 1639; *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003).  "Next, and

22    most importantly, '[t]he whole of a contract is to be taken together, so as to give effect to every

23    part, if reasonably practicable, each clause helping to interpret the other.'"  *Int'l Bhd. Of*

24    *Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (citing Cal. Civ. Code §

25    1641).  Ambiguous contract provisions are to be construed against the drafter.  *Id.*

26          "A [contract] provision will be considered ambiguous when it is capable of two or more

27    constructions, both of which are reasonable . . . But language in a contract must be interpreted as

28    a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the

1  abstract." *MacKinnon*, 31 Cal. 4th at 648 (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1,

2  18 (1995)).  Moreover, "courts will not strain to create an ambiguity where none exists," nor is

3  "[t]he language of a contract . . . made ambiguous simply because the parties urge different

4  interpretations." *Int'l Bhd. Of Teamsters*, 957 F.3d at 1044 (citing *Waller*, 11 Cal. 4th at 18–19;

5  *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)).

6          Section Four of the Note reads in its entirety:

7                  I have the right to make payments of Principal at any time before
8                  they are due. A payment of Principal is only known as a
                   "Prepayment." When I make a Prepayment, I will tell the Note
9                  Holder in writing that I am doing so. I may not designate a payment
                   as a Prepayment if I have not made all the monthly payments due
10                 under the Note.

11                 I may make a full Prepayment or partial Prepayments without
12                 paying a Prepayment charge. The Note Holder will use my
                   Prepayments to reduce the amount of Principal that I owe under this
13                 Note. However, the Note Holder may apply my Prepayment to the
                   accrued and unpaid interest on the Prepayment amount, before
14                 applying my Prepayment to reduce the Principal amount of the Note.
                   If I make a partial Prepayment, there will be no changes in the due
15                 date or in the amount of my monthly payment unless the Note
16                 Holder agrees in writing to those changes.

17  (ECF No. 35 at 11.)

18          In *Busch v. Wells Fargo Home Mortg. Inc.*, a district court within the Eastern District of

19  Kentucky interpreted a section of a promissory note that is word-for-word identical to Section

20  Four of the Note in this case.  No. 5:16-cv-210-JMH, 2017 WL 82473, at *2 (E.D. Ky. Jan. 9,

21  2017).  Similar to the instant case, the Busches alleged Wells Fargo breached the terms of the

22  promissory note and mortgage by "misapplying payments and by providing inaccurate

23  information to the three major credit bureaus concerning the Busches' account."  *Id.* at *6.  The

24  court held that while "the Note and Mortgage grant the Busches the right to make prepayments on

25  principal, so long as they were identified in writing, there is no contractual language indicating

26  that they enjoyed a similar right to make advance monthly payments."  *Id.*  The court clarified

27  further that Wells Fargo "did not have a contractual obligation to process the plaintiffs'

28

payments" as covering monthly payments, rather than using part of the payments to cover the principal. *Id.* at *2, 6. The court ultimately dismissed the Busches' breach of contract claim.

Additionally, in *Chungag v. Wells Fargo Bank, N.A.*, the Sixth Circuit affirmed a district court's dismissal of the Chungags' claim to quiet title. 489 F. App'x 820, 824 (6th Cir. 2012). The Sixth Circuit found the Chungags defaulted on their loan when they failed to make their monthly payments, as "the mortgage and note did not create a duty for Wells Fargo to treat the excess payments as advance payments." *Id.* The Sixth Circuit treated the matter as a contract interpretation question, noting the district court highlighted several provisions from the mortgage agreement to support its contention that the Chungags had defaulted. *Id.* at 823. Such provisions include the following:

> • The borrower has "the right to make payments of principal at any time before they are due. A payment of principal only is known as a 'prepayment.'"
> • When the borrower makes a prepayment, the borrower "*will tell the Note Holder in writing that I am doing so*."
> • The borrower "may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of [the borrower's] prepayments to reduce the amount of principal that [the borrower] owe[s] under this Note."
> • If [the borrower] makes "a partial prepayment, there will be no changes in the due date or in the amount of [the borrower's] *monthly payments unless the Note Holder agrees in writing to those changes*."
> • If [the borrower] do[es] not pay *the full amount of each monthly payment on the date it is due, [the borrower] will be in default*."

*Id.* at 823–24 (emphasis in original). The court found the mortgage agreement does not address what should happen if a "borrower makes an excess payment without an accompanying written statement, and there is nothing in the contract that prohibits Wells Fargo from treating excess payments as prepayments, which is the most natural and logical course of action." *Id.* at 824. The Chungags argued Wells Fargo had a duty to treat the excess payments as "advance payments" and that the district court's interpretation is "ludicrous and contrary to common sense . . . because it would cause numerous people to default on their mortgage simply by making a late payment." *Id.* The Sixth Circuit rejected both arguments and agreed with Wells Fargo that there is nothing in the note or mortgage "that requires, or even allows, Wells Fargo to treat excess payments made by plaintiffs as advance payments." *Id.*

1    Here, Plaintiffs rely on the text from Section Four that provides: "When I make a
2 Prepayment, I will tell the Note Holder in writing that I am doing so."  (ECF No. 38 at 14; *see*
3 *also* ECF No. 35 at 11.)  Plaintiffs maintain the Note does not provide guidance "to the
4 determination of how a payment is designated as a Prepayment in the first instance . . . and a
5 borrower might expect the monthly payments to lower following a Prepayment."  (*Id.* at 14–15.)
6 Plaintiffs imply that since BANA did not provide them with written authorization that BANA was
7 applying the excess September 2013 payment to the principal balance of the loan, BANA acted
8 unlawfully.  (*See id.*)  Plaintiffs maintain that "[a]t best, Section [Four] is ambiguous,
9 necessitating the application of California rules of contractual interpretation," which dictate that
10 Defendant's interpretation should be rejected as it is "absurd and giv[es] rise to an extraordinarily
11 inequitable outcome" in which a lender can "unilaterally decide to apply a monthly payment that
12 arrives one day before the first of any given month to the principal balance, almost certainly
13 forcing the borrower into arrears and default."  (*Id.* at 13–16.)

14    Conversely, Defendant contends the Note provides that "if Plaintiffs made a loan payment
15 before it was due, it would be considered a 'Prepayment' and 'will' be used to reduce the
16 principal balance of the loan" and identifies "Prepayment" as loan payments submitted "at any
17 time before they are due."  (ECF No. 36 at 17.)  The Note further clarifies Prepayment has "no
18 effect on the monthly payment schedule set forth in the Note," nor does the Note condition the
19 ability of the lender or its agents to apply excess proceeds to the principal balance on written
20 authorization from the borrower.  (*Id.* at 17–18.)

21    Defendant has the better argument.  The Court has reviewed the Note and there is no
22 contractual language to support Plaintiffs' argument that the Note created a duty on BANA to
23 treat the excess payments as advance monthly payments.  Similar to *Busch* and *Chungag*, the
24 Note requires the borrower to state in writing that he or she intends an excess payment to be
25 treated as a prepayment of the principal.  (*See* ECF No. 35 at 10–13.)  However, the Note does
26 not specify what should happen when the borrower makes an excess payment without an
27 accompanying written statement.  (*Id.*)  Plaintiffs do not allege they made any written statements
28 requesting that BANA apply the excess monies from the September 2013 payment to the

1   principal.  (*See* ECF No. 35 at 3–6.)  Nor do the Plaintiffs allege they submitted any written

2   statements requesting the excess amount be applied to the October 2013 payment.  (*Id.*)

3         The Note explicitly allows BANA to treat excess payments as partial prepayments or

4   payments toward the principal.  (*See* ECF No. 35 at 10–13.)  Meanwhile, the Note does

5   unambiguously state the borrower must make payments on the first of the month.  (*Id.*)  The Note

6   also states the amount and due date of the monthly payments will not change based on partial

7   prepayments.  (*Id.*)  Therefore, Section Four of the Note put Plaintiffs on notice that BANA was

8   permitted to apply the excess amount from the September 2013 payment to the principal without

9   affecting the amount or due date of future monthly payments, and the Note did not impose a duty

10  on BANA to provide further notice in these circumstances.  Accordingly, BANA's treatment of

11  the excess funds from the September 2013 monthly payment as a prepayment to the principal

12  rather than an advance to the October 2013 payment was lawful and not a breach of contract.

13        *ii.*      *Defendant's Breach of Duty*

14        Defendant further argues "none of [its] independent conduct breached any duty of care

15  that was allegedly owed to Plaintiffs."  (ECF No. 36 at 18.)  Having argued BANA's application

16  of the September 2013 payment was lawful, Defendants contend Plaintiffs breached the terms of

17  the loan by failing to make the October 2013 payment.  (*Id.*)  Therefore, since Plaintiffs were in

18  default on the loan, Defendant was "well within its ability to assess late fees against the loan and

19  return the payments at issue."  (*Id.*)  In opposition, Plaintiffs primarily focus on whether there is a

20  duty of care owed to them by Defendant.  (ECF No. 38 at 8–11.)  Plaintiffs correctly note this

21  Court has already found Defendant likely owed Plaintiffs a duty of care in handling the payments

22  on their mortgage loan.[4]  (*See id.*)

23        As previously noted, Defendant argues it "was well within its rights to reject any and all

24  subsequent payments on the loan as . . . insufficient to bring the loan current" after BANA's

25  lawful application of the September 2013 payment and Plaintiffs' failure to make the requisite

26

27    [4]    This Court has found Defendant likely owed a duty of care to Plaintiffs in handling the
    payments on their mortgage loan.  (*See* ECF No. 28 at 11–13.)  Plaintiffs have not alleged any
28  new facts nor has Defendant made any new arguments that would alter this determination.

1   October 2013 payment.  (ECF No. 36 at 18–19.)  Plaintiffs maintain Defendant "misapplied

2   payments made by [Plaintiffs] in April 2014 intended to make up for the September 2013 error,"

3   failed to review the Note "to confirm that the September 2013 payment was applied correctly,"

4   failed to take action "to cure any misapplication," and "falsely reported to credit reporting

5   agencies that [Plaintiffs were] behind in their payments."  (ECF No. 38 at 17.)

6        Here again, Defendant has the better argument.  Considering Plaintiffs were in default

7   after BANA's proper application of the September 2013 payment and Plaintiffs' subsequent

8   failure to make their October 2013 payment, it was not a breach of its duty of care in handling the

9   payments on Plaintiffs' mortgage loan for Defendant to assess late penalty charges.  (*See* ECF

10  No. 36 at 19–20.)  Moreover, Paragraph 1 of the Deed of Trust provides: "Lender may return any

11  payment or partial payment if the payment or partial payments are insufficient to bring the Loan

12  current."  (ECF No. 37 at 7.)  As such, after Plaintiffs went into default on the loan for failing to

13  make the October 2013 payment, Defendant had the right to return any subsequent payments or

14  partial payments that were insufficient to bring the loan current.  The Note does not contain any

15  provisions restricting Defendant from communicating with credit reporting agencies and therefore

16  Defendant did not breach its duty of care when it reported Plaintiffs' failure to make their

17  monthly payments on time.  (*See* ECF No. 35 at 11–13.)

18       Accordingly, Defendant's motion to dismiss the first claim is GRANTED.  As the Court

19  finds Plaintiffs' "pleading could not possibly be cured by the allegation of other facts," the Court

20  denies leave to amend.  *See Lopez*, 203 F.3d at 1130.

21              B.    UCL

22       Plaintiffs allege Defendant engaged in "unlawful, unfair, and/or fraudulent business

23  practices."  (ECF No. 35 at ¶¶ 48–49.)  In its motion, Defendant argues Plaintiffs' UCL claim

24  fails because Plaintiffs' predicate negligence claim also fails.  (ECF No. 36 at 20.)

25       California's UCL "does not proscribe specific activities, but broadly prohibits 'any

26  unlawful, unfair or fraudulent business act or practice . . .'"  *Boschma v. Home Loan Ctr., Inc.*,

27  198 Cal. App. 4th 230, 251–52 (2011) (citing Cal. Civ. Code § 17200).  "By proscribing 'any

28  unlawful' business practice, 'section 17200 'borrows' violations of other laws and treats them as

unlawful practices' that the unfair competition law makes independently actionable." *Id.* (citing Cal. Civ. Code § 17200).

Here, to the extent Plaintiffs' UCL claim is predicated on its negligence claim, the former fails because the latter failed to state a claim upon which relief may be granted.  Accordingly, Defendant's motion to dismiss the UCL claim is GRANTED without leave to amend.

**IV.   CONCLUSION**

Based on the foregoing, the Court hereby GRANTS Defendant's Motion to Dismiss (ECF No. 36) without leave to amend.

IT IS SO ORDERED.

DATED:  March 18, 2021

Troy L. Nunley
United States District Judge